NOT FOR PUBLICATION OR CITATION

Eastern District of Kentucky
FILED
AUG 1 4 2006
AT COVINGTON
LESLIE G WHITMER
CLERK U S DISTRICT COURT

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
COVINGTON

CIVIL ACTION NO. 06-CV-147-DLB

MONTEZ J.D. BUSH                                                                PLAINTIFF

VS:          **MEMORANDUM OPINION AND ORDER**

JAILER STEVEN KELLAM, ET AL.                                        DEFENDANTS

Montez J.D. Bush, who is confined in the Grant County Detention Center ("GCDC") in Williamstown, Kentucky, has filed a *pro se* complaint under 42 U.S.C. §1983 [Record No. 1]. He has also filed a "Motion to Proceed *In Forma Pauperis*" [Record No. 2], which the Court will address by separate order.

This matter is before the Court for initial screening. 28 U.S.C. §1915A; *McGore v. Wrigglesworth*, 114 F.3d 601, 607-8 (6th Cir. 1997).

To establish a right to relief under §1983, the plaintiff must plead and prove two essential elements. He must show, first, that he has been deprived of rights secured by the Constitution or laws of the United States and, second, that the defendants allegedly depriving him of those rights acted under color of state law. *Parratt v. Taylor*, 451 U.S. 527, 535 (1981); *O'Brien v. City of Grand Rapids*, 23 F.3d 990 (6th Cir. 1994).

This is a *pro se* complaint and, as such, it is held to less stringent standards than those drafted by attorneys. *See Cruz v. Beto*, 405 U.S. 319 (1972); *Haines v. Kerner*, 404 U.S. 519 (1972). The allegations in a *pro se* complaint must be taken as true and construed in favor of the

plaintiff. *See Malone v. Colyer*, 710 F.2d 258, 260 (6th Cir. 1983). However, 28 U.S.C. §1915(e)(2) affords a court the authority to dismiss a case at any time if the court determines that the action is (i) frivolous or malicious or (ii) fails to state a claim upon which relief can be granted.

## NAMED DEFENDANTS

The plaintiff names the following defendants: (1) Steven L. Kellam, Jailer of the GCDC; (2) the GCDC; and (3) the United States Marshals.

## CLAIMS

First, the plaintiff alleges that the defendants violated his First Amendment rights by repeatedly serving him certain food products which violated his Rastafarian religious beliefs. Second, he claims that the defendants violated his Eighth Amendment right to be free of cruel and unusual punishment by exerting physical force on him, and that he sustained injuries as a result thereof. Third, he alleges that the defendants violated his Eighth Amendment rights by placing him in a "detox" cell for thirteen hours after he filed a grievance concerning his First Amendment religious and Eighth Amendment excessive force claims. To the extent that the plaintiff claims that his thirteen hours in "detox" detention was in retaliation for having filed an administrative grievance, that claim would also fall under the First Amendment.

## RELIEF REQUESTED

The plaintiff seeks unspecified relief. He states that he wants the Court to hold "those involved accountable for constitutional, federal and administrative regulations violations of rights and procedures." Complaint Form, §V.

2

## ALLEGATIONS OF THE COMPLAINT

On June 21, 2006, the plaintiff filed a grievance with the GCDC staff in which he set forth all three claims discussed above. His grievance is attached to his complaint. The bottom of the document contains the GCDC's June 26, 2006 response, although the name of the GCDC staff member who completed that segment is not discernable.

In that response, the staff member explained to the plaintiff that special dietary trays "go into the cell first."[1] The staff member further chastised the plaintiff for having argued about his dietary tray with a floor deputy instead of raising the issue with a supervisor. The staff member stated that if the plaintiff broke the rules he would be at risk for detention in isolation. On June 28, 2006, the plaintiff appealed to the next level within the GCDC.

On the same day, the "Operations Captain" responded that the he had spoken with the food staff and was assured that all special dietary trays would be reviewed and determined to be correct before being distributed. Not satisfied, the plaintiff appealed to the warden of the GCDC. On June 30, 2006, Warden Kellam stated that although the GCDC would at all times respond to any issues raised regarding deficiencies with dietary food trays, the plaintiff's "aggressive behavior" (described as cursing, kicking doors and threatening GCDC staff) would not be tolerated. He informed the plaintiff that any repeat of this type of behavior would result in appropriate punishment.

---

[1] The staff member states as follows: "Special trays go into the cell first, *the number of trays was the issue not a special tray that you already had.*" [June 26, 2006 "Informal Resolution" Response (Emphasis Added)]. The staff member's meaning in this statement is not clear to the Court. The Court can only assume that the staff member perceived that the plaintiff had some type of misunderstanding about the process of delivering dietary trays to inmates.

3

The plaintiff initiated a second grievance on July 6, 2006, in which he complained about receiving on his food trays a specific food item which does not comply with his religious beliefs. A GCDC staff member replied on July 7, 2006, that the kitchen was advised of the plaintiff's diet, but that the kitchen "denied any changes to diet." [*See* "Informal Resolution" Response]

The Operations Captain responded on July 10, 2006, and explained that all of the GCDC's sausage and bologna are made of turkey, not pork. He stated that after explaining this fact to the plaintiff, the plaintiff decided that he would continue to eat sausage and bologna. The plaintiff marked the box indicating that he was satisfied with the Recommendation of the Operations Captain.

## DISCUSSION

The Court is required to dismiss the plaintiff's complaint without prejudice. The plaintiff has not fully and completely exhausted his claims according to Kentucky Department of Corrections ("KDOC") regulations.

The Prison Litigation Reform Act (PLRA) requires that a prisoner exhaust administrative remedies before filing suit in the district court. 42 U.S.C.A. §1997e. It states: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. §1997e(a) (2004).

The plaintiff-prisoner has the burden of proving that a grievance has been fully exhausted, *Baxter v. Rose*, 305 F.3d 486, 488 (6th Cir.2002), and the prisoner must attach documentation to the complaint as proof. *Brown v. Toombs*, 139 F.3d 1102, 1104 (6th Cir.1998). Exhaustion

4

is not jurisdictional; it is mandatory, *Wyatt v. Leonard*, 193 F.3d 876, 879 (6th Cir.1999), even if proceeding through the administrative system would be "futile." *Hartsfield v. Vidor*, 199 F.3d 305, 308-10 (6th Cir.1999).

The KDOC has promulgated a set of administrative regulations at 501 K. A. R. 6:020. These regulations, referred to as "Corrections Policies and Procedures" ("CPP"), govern prison procedures. CPP Number 14.6, entitled *Inmate Grievance Process,* explains the four steps which state inmates are required to pursue in order to file a grievance. According to CPP 14.6, §VI (I)(1), a prisoner in a state correctional institution must informally attempt to grieve a claim with the Grievance Aide, the Grievance Coordinator, the department head, or institutional staff.

If the attempt at informal resolution fails, he must pursue formal steps by seeking a hearing before the Grievance Committee [*Id.*, §(2)]. The Committee's decision must be forwarded to the warden, who is responsible for making a final written decision [*Id.*, §2(c)-(d)]. A prisoner who is not satisfied with the warden's final decision may appeal that decision to the Commissioner of Corrections by using a specific form described in §3(a) of the *Inmate Grievance Process*.

Here, the plaintiff pursued all three of his claims through the level of the warden of the GCDC. He has not, however, filed documentation indicating that he pursued the next and final step required by the KDOC regulation with regard to any of his three claims: appeal to the Commissioner of the KDOC.[2] For that reason, the complaint will be dismissed without prejudice

---

[2]

The Court notes that the plaintiff's second grievance (July 6, 2006) indicates that he was satisfied with the GCDC's disposition of his First Amendment claim relating to the alleged service

to the exhaustion of the claims.

The plaintiff is forewarned that even after exhaustion, his claim relating to his thirteen-hour detention in "detox" would most likely be subject to dismissal on the merits for failure to state a constitutional claim. The plaintiff does not allege that this disciplinary punishment caused him to lose any good time credits, in which he had a constitutionally protected liberty interest. For a prisoner, a deprivation of a legally cognizable liberty interest occurs when the prison "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484, 115 S. Ct. 2293 (1995).

Simply put, the short period of time (13 hours) in which the plaintiff was confined in "detox" does not rise to the level of a constitutional violation. *See Sandin v. Conner*, 515 U.S. at 484-86; *Mackey v. Dyke*, 111 F.3d 460, 463 (6th Cir.1997); *Wilson v. Wellman*, 238 F.3d 426, 2000 WL 1829265, **3 (6th Cir.(Mich.) December 6, 2000) (Unpublished Disposition (Since the plaintiff did not suffer the loss of good-time credits or any other action affecting the duration of his sentence, he had no due process claim because his punishment, including disciplinary segregation, did not impose an atypical and significant hardship in relation to the ordinary incidents of prison life); *Ford v. Harvey*, 106 Fed. Appx. 397 (Not selected for publication in the Federal Reporter) (August 6, 2004) (State prisoner's placement in disciplinary confinement did not implicate a liberty interest entitled to due process protection, where it was neither accompanied by loss of good time credits nor lasted for a significant period of time causing an unusual hardship on prisoner). The plaintiff is advised that even after full exhaustion, that claim

---

of pork food products. In light of his acknowledgment that he was satisfied with the Operations Captain's disposition of that claim, the plaintiff may no longer have a valid claim on that issue.

would most likely be dismissed *with* prejudice.

## CONCLUSION

Accordingly, **IT IS ORDERED** as follows:

(1) The complaint is **DISMISSED WITHOUT PREJUDICE**.

(2) Judgment shall be entered contemporaneously with this Memorandum Opinion and Order in favor of the defendants.

This 14th day of August, 2006.



Signed By:
David L. Bunning
United States District Judge